**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **UNITED STATES OF AMERICA,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **v.** ) | **Civil Action No. 19-cv-3098 (DLF)** |
| ) | |
| **TWENTY-FOUR CRYPTOCURRENCY** ) | |
| **ACCOUNTS,** ) | |
| ) | |
| **Defendant *In Rem*** ) | |
| ) | |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION FOR
ENTRY OF DEFAULT JUDGMENT AS TO DEFENDANT PROPERTIES
<u>ASSOCIATED WITH THE WEBSITE "WELCOME TO VIDEO"</u>**

On October 16, 2019, the United States commenced an *in rem* civil action against twenty-four cryptocurrency accounts associated with the child pornography website Welcome To Video and its users ("Defendant Properties"). The action was filed in accordance with Rule G(2) of the Federal Rules of Civil Procedure, Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions. Default was entered against Defendant Properties on June 23, 2020. This matter is now ripe for entry of a default judgment; specifically, the United States requests forfeiture of the Defendant Properties.

**<u>FACTUAL BACKGROUND</u>**

This *in rem* action arises out of an investigation by the Internal Revenue Service – Criminal Investigation's Cyber Crimes Unit ("IRS-CI") and Homeland Security Investigations ("HSI") into a child exploitation material website named Welcome To Video. Users of Welcome To Video have knowingly and willfully conspired with others and acted individually to: receive or distribute any visual depiction which contains materials depicting a minor engaging in sexually explicit conduct,

which have been mailed or shipped or transported by computer in violation of 18 U.S.C. § 2252(a)(2); and possess and access with intent to view a depiction of a minor engaging in sexually explicit conduct in violation of 18 U.S.C. § 2252(a)(4)(B). These individuals laundered funds contained in the Defendant Properties to procure content in violation of the above statutes. *See* Complaint (ECF 1) at ¶ 2. The specific allegations are set forth in the United States' Complaint.

### Welcome To Video Website

Welcome To Video was a Tor[1] network-based child exploitation material website, which began operating in or before June 2015. Welcome To Video hosted and distributed image and video files depicting child exploitation material. The upload page on Welcome To Video stated: "Do not upload **adult** porn." Complaint (ECF 1) at ¶ 9 (emphasis in original).

On or about February 8, 2018, Welcome To Video indicated on its download page that its users had downloaded files from Welcome To Video more than a million times. As of on or about March 5, 2018, Welcome to Video had over 200,000 unique video files, which totaled approximately eight terabytes of data. As files were uploaded by users, Welcome to Video compared the video's hash to previously uploaded videos to ensure each upload was unique. Each video had a title, a description (if included by the uploader), "tags" with further descriptions of the video, and a preview thumbnail image that contained approximately sixteen unique still images from the video. Complaint (ECF 1) at ¶ 11.

The video search page of Welcome To Video listed keyword search terms and the number of videos associated with each keyword. On or about February 8, 2018, some of the top keyword

---

[1] Tor is a computer network which anonymizes Internet activity by routing a user's communications through a global network of relay computers (or proxies), thus effectively masking the Internet Protocol ("IP") address of the user.

search terms and the associated approximate videos included "PTHC," "PEDO," "%2yo," "%4yo," and "incest."

      a.   "PTHC" is an abbreviation for "preteen hardcore."

      b.   "PEDO" is an abbreviation for "pedophile."

      c.   "%2yo" is an abbreviation for "2-year-old."

      d.   "%4yo" is an abbreviation for "4-year-old."

To access the site, customers created a free account on Welcome To Video by creating a username and password, but supplied no other identifiable information such as an email address. Once a customer had an account, the customer could browse picture previews of videos depicting child exploitation material that were available for download.

In order to download videos from Welcome To Video, customers were required to redeem "points." Points could be obtained by: (1) uploading videos depicting child exploitation material; (2) referring new customers to Welcome To Video; (3) paying 0.03 bitcoin[2] (BTC) (approximately $352.59 as of March 5, 2018) for a "VIP" account, which lasted for six months and purportedly allowed unlimited downloads; and/or (4) paying for points incrementally (*i.e.*, 0.02 BTC for 230 points). Points were not transferable to any other website or application. Once BTC were sent to Welcome To Video, they could not be refunded or redirected. Points obtained by the payment of BTC could only be used for downloading videos. Once a user uploaded videos depicting child exploitation material to Welcome To Video, the uploader was unable to delete the video. However, the administrator retained access to these videos and all BTC accumulated by Welcome To Video.

---

[2] Bitcoin is a cryptocurrency circulated over the Internet as a form of value and medium of exchange.

Welcome To Video directed customers to particular BTC exchanges[3] to make payments, including an exchange in the United States. Welcome To Video assigned a unique BTC address, the BTC equivalent of an anonymous account number, for each Welcome To Video customer account to receive payments and assign points appropriately. Welcome To Video set up over 1.3 million BTC addresses.

Throughout the course of the investigation, law enforcement gathered a list of thousands of unique BTC addresses associated with Welcome To Video. This list included an undercover agent's BTC address which Welcome To Video assigned to the undercover agent when the undercover agent created an account on Welcome To Video. From in or about June 2015 to on or about March 8, 2018, Welcome To Video received at least 240 BTC through at least 7,300 transactions. Transactions originated in numerous countries, including the United States, the United Kingdom, and South Korea.

On multiple occasions, the agent acting in an undercover capacity paid BTC to Welcome To Video and used the website to download child exploitation material video files while in Washington, D.C. These child exploitation material video files included pre-pubescent children, infants, and toddlers engaged in sexually explicit conduct. Specifically, those video files contained the following:

    a. File name ███████████████████████████████████ with the video tag description ████████ depicted a child, approximately ten years old, and an adult male inserting his penis into the child's mouth and anus. Welcome To Video customers downloaded this video 957 times;

---

[3] A BTC exchange is a business that allows users to exchange government-backed currencies, such as U.S. dollars, or other virtual currencies, for BTC, and vice versa. Many BTC exchanges also allow users to store BTC in accounts held with the exchange.

b. File name ███████ with the video tag description ███████████████ ███████ depicted a female child, approximately three years old. The child is nude and bound with her legs spread apart so that her genitalia is visible. An adult male urinates on her. Welcome To Video customers downloaded this video 219 times;

c. File name ████████████ with the video tag description ███████ depicted a female toddler, approximately two or three years old. An adult male inserted his penis inside of the anus of the female toddler. Welcome To Video customers downloaded this video 369 times;

d. File name ██████████ with the video tag description ██████ ███████████ depicted an infant, approximately six months old. An adult male inserted his penis inside the mouth and anus of the infant. Welcome To Video customers downloaded this video 113 times;

e. Finally, file name ██████████ with the video tag description ███████ ██████████ depicted a female child, approximately eight years old. An adult male inserted his penis into the child's anus. Welcome To Video customers downloaded this video 69 times.

<u>Events Leading Up to the Seizure of Defendant Properties</u>

Law enforcement discovered that Welcome To Video had failed to conceal its server's IP address. This IP address resolved to a telecommunications provider in South Korea. Subsequently the investigation confirmed that this IP address was registered in the name of Jong Woo Son and that the address serviced his residence in South Korea.

On February 28, 2018, a federal magistrate judge in the United States District Court for the District of Columbia issued an arrest warrant for Jong Woo Son. On or about March 5, 2018, South

Korean law enforcement executed a search warrant at the residence of Jong Woo Son in South Korea. Pursuant to the search, South Korean law enforcement seized Welcome To Video's server and associated electronic storage media from the bedroom of Jong Woo Son. U.S. law enforcement subsequently received a forensic image of the Welcome To Video server.

A review of the imaged data confirmed that Welcome to Video was hosted on the seized server. A review of a sample of the video files further corroborated that Welcome To Video was dedicated to distribution of child exploitation material. The customer data generally identified the customer was associated with BTC payments made to Welcome To Video. A review of a sample of the payments to Welcome To Video cross-referenced against the username and download data from the server revealed that payments to Welcome To Video corresponded with the user downloading videos from Welcome To Video. A review of the forensic image of the server further revealed that certain Welcome To Video co-conspirators uploaded illicit content to the site.

<u>The Defendant Properties</u>

Analyzing the blockchain, BTC's public transaction ledger, revealed BTC addresses that laundered BTC to Welcome To Video from accounts hosted at BTC Exchange 1, BTC Exchange 2, and BTC Exchange 3 (collectively, the "BTC Exchanges"). The BTC Exchanges are all cryptocurrency exchanges offering services to customers worldwide, including the storing of cryptocurrency in online "wallets."

Based on the investigation described above, law enforcement discovered the below accounts at the BTC Exchanges, which comprise the Defendant Properties. Law enforcement previously seized these twenty-four accounts pursuant to a judicially-authorized seizure warrant.

**a) BTC Exchange 1**

1. BTC Exchange 1 account **5185e2c6b3bd3de60e00002a** – From approximately August 16, 2015, to July 9, 2016, this account laundered BTC nine times to a BTC address controlled by Welcome To Video, totaling approximately 0.91 BTC. User data obtained from the forensic image of the server revealed the above-listed BTC payments were linked to Welcome To Video username "gat0rs," who downloaded at least 219 videos from Welcome To Video. Further, blockchain analysis revealed that this account also laundered BTC to darknet markets, including Agora, AlphaBay, Evolution, and Silk Road, which sold drugs, stolen information, and other illicit products.

2. BTC Exchange 1 account **5652a83e6f4be24bf9000110** – On or about February 5, 2018, this account laundered approximately 0.01035562 BTC to a BTC address controlled by Welcome To Video. User data obtained from the forensic image of the server revealed the above-listed BTC payment was linked to Welcome To Video username "jaclist2010," who downloaded at least nine child exploitation material videos from Welcome To Video.

3. BTC Exchange 1 account **559715bd61373556e00000ae** – On or about July 10, 2015, this account laundered approximately 0.10 BTC to a BTC address controlled by Welcome To Video. The BTC transaction had a memo of "UserName: loki354." User data obtained from the forensic image of the server revealed the above-listed BTC payment was linked to Welcome To Video username "loki354," who downloaded at least six child exploitation material videos from Welcome To Video.

4. BTC Exchange 1 account **58760323ee243500a3067f85** – On or about August 25, 2017, and September 6, 2017, this account laundered two payments to a BTC address

controlled by Welcome To Video, totaling approximately 0.02203612 BTC. User data obtained from the forensic image of the server revealed the above listed BTC payments were linked to Welcome To Video username "poopman420k," who downloaded at least 205 videos from Welcome To Video.

5. BTC Exchange 1 account **56454cd5399d4a00f00001ae** – On or about November 13, 2015, this account laundered approximately 0.25 BTC to a BTC address controlled by Welcome To Video. User data obtained from the forensic image of the server revealed the above-listed BTC payment was linked to Welcome To Video username "mg2005," who downloaded at least four videos from Welcome To Video and uploaded at least one video, which had the title of "███████████████," to Welcome To Video.

6. BTC Exchange 1 account **524c41b07f435f428400005a** – On or about October 20, 2015, this account laundered approximately 0.18 BTC to a BTC address controlled by Welcome To Video. User data obtained from the forensic image of the server revealed the above-listed BTC payment was linked to Welcome To Video username "jor1092," who downloaded an approximate total of 52,592.7 MBs of videos (the maximum for a six month VIP account, equivalent to approximately 676 videos) from Welcome To Video. Further, blockchain analysis revealed that this account also laundered BTC to darknet markets, including Agora and Evolution, which sold drugs, stolen information, and other illicit products.

7. BTC Exchange 1 account **563443739ac69f3b29000170** – On or about December 9, 2015, this account laundered approximately 0.10 BTC to a BTC address controlled by Welcome To Video. User data obtained from the forensic image of the server revealed

the above-listed BTC payment was linked to Welcome To Video username "franky77," who downloaded an approximate total of 52,592.7 MB of videos (the maximum for a six month VIP account, equivalent to approximately 676 videos) from Welcome To Video. Further, blockchain analysis revealed that this account also laundered BTC to darknet markets, including Hansa and AlphaBay, which sold drugs, stolen information, and other illicit products.

8. BTC Exchange 1 account **5a4fab5fd24e170544892941** – On or about January 21, 2018, this account laundered approximately 0.00133308 BTC to a BTC address controlled by Welcome To Video. User data obtained from the forensic image of the server revealed the above-listed BTC payment was linked to Welcome To Video username "insipity," who downloaded at least 98 videos from Welcome To Video.

9. BTC Exchange 1 account **5676f8ba7d98e545080000b8** – On or about September 3, 2017, and November 23, 2017, this account laundered two payments to a BTC address controlled by Welcome To Video totaling approximately 0.04141252 BTC. User data obtained from the forensic image of the server revealed the above listed BTC payments were linked to Welcome To Video username "qtnvomaz," who downloaded at least 310 videos from Welcome To Video.

10. BTC Exchange 1 account **5687df5a4b12f73aa50000c0** – On or about February 6, 2017, and August 13, 2017, this account laundered two payments to a BTC address controlled by Welcome To Video totaling approximately 0.24049414 BTC. One of the BTC transactions had a memo of "I forgot my user pass so signed up again.  desinnude [sic] Welcome1." That is, the account owner indicated that he forgot his password for his account on Welcome To Video and created a new account. User data obtained from

the forensic image of the server revealed the above-listed BTC payments were linked to Welcome To Video username "desinude." This account also laundered approximately 1.05 BTC on or about January 8, 2016, to a second BTC address controlled by Welcome To Video. User data obtained from the forensic image of the server revealed the second BTC address was linked to Welcome To Video username "winkit," who downloaded at least 113 videos from Welcome To Video.

11. BTC Exchange 1 account **55f1718c2289a067b50001fa** – On or about September 18, 2015, this account laundered two payments to a BTC address controlled by Welcome To Video totaling approximately 0.34 BTC. User data obtained from the forensic image of the server revealed the above-listed BTC payments were linked to Welcome To Video username "asd8973," who downloaded an approximate total of 52,592.7 MBs of videos (the maximum for a six month VIP account, equivalent to approximately 676 videos) from Welcome To Video.

12. BTC Exchange 1 account **55a4403965373100d7000165** – On or about July 18, 2015, this account laundered approximately 0.29 BTC to a BTC address controlled by Welcome To Video. The BTC transaction had the memo of "VIP for thalaw plz and thanks." User data obtained from the forensic image of the server revealed the above listed BTC payment was linked to Welcome To Video username "thalaw," who purchased a six month VIP account (which could leads to downloads equivalent to approximately 676 videos)). Further, blockchain analysis revealed that this account also laundered BTC to darknet markets, including Agora, that sold drugs, stolen information, and other illicit products.

13. BTC Exchange 1 account **566a1a4495c0be0d1c000230** – On or about April 18, 2016, this account laundered approximately 0.02 BTC to a BTC address controlled by Welcome To Video. User data obtained from the forensic image of the server revealed the above-listed BTC payment was linked to Welcome To Video username "m8te666." This user also appeared on other known darknet and illicit sites which offered money laundering services and child exploitation material content.

14. BTC Exchange 1 account **55f974c78cc94d4d4b000244** – On or about September 18, 2015, this account laundered an approximate total of 0.45 BTC to a BTC address controlled by Welcome To Video. The BTC transaction had a memo that stated "0 BTC (X) user blinder." User data obtained from the forensic image of the server revealed the above-listed BTC payment was linked to Welcome To Video username "blinder," who downloaded an approximate total of 52,592.7 MB of videos (the maximum for a six month VIP account, equivalent to approximately 676 videos) from Welcome To Video.

15. BTC Exchange 1 account **531e0828ead59cce4a000264** – Between October 11, 2015, and April 30, 2016, this account laundered four payments to four BTC addresses controlled by Welcome To Video, totaling approximately 0.66 BTC. User data obtained from the forensic image of the server revealed the above-listed BTC payments were linked to Welcome To Video usernames "freepdc," "detnews," "lucytai," and "freepdc4." Users "freepdc" and "detnews" downloaded an approximate total of 52,592.7 MB of videos (the maximum for a six month VIP account, equivalent to approximately 676 videos) from Welcome To Video. On or about October 23, 2017, law enforcement seized the account owner's electronic media. On or about the morning of October 25, 2017, the account owner committed suicide at his Washington, D.C.

11

residence. A search of the account owner's media revealed numerous files depicting child pornography. Further, blockchain analysis revealed that the BTC account also laundered BTC to darknet markets, including Agora and Dream, which sold drugs, stolen information, and other illicit products.

16. BTC Exchange 1 account **583c85d54d3af20217519752** – Between November 28, 2016, and April 26, 2017, this account laundered three payments to a BTC address controlled by Welcome To Video, totaling approximately 0.13049720 BTC. User data obtained from the forensic image of the server revealed the above-listed BTC payments were linked to Welcome To Video username "karmacowboy," who downloaded at least 78 videos from Welcome To Video.

17. BTC Exchange 1 account **558ac736316131095b0001a4** – Between July 20, 2015, and May 22, 2017, this account laundered 13 payments to a BTC address controlled by Welcome To Video, totaling approximately 1.12 BTC. User data obtained from the forensic image of the server revealed the above-listed BTC payments were linked to Welcome To Video username "trincaps2," who downloaded at least 676 videos (with an approximate total size of 52,592.7 MB of videos, which was the maximum for a six month VIP account) from Welcome To Video.

   a. On June 15, 2018, law enforcement executed a search warrant of the account owner's residence in relation to this investigation. The search revealed child exploitation material located on the account owner's electronic devices. The account owner was subsequently arrested on an indictment charging possession and receipt of child pornography.

18. BTC Exchange 1 account **573808d68fdf8333f300002a** – On or about May 21, 2016, this account laundered approximately 0.090 BTC to a BTC address controlled by Welcome To Video. The BTC transaction included the memo, "I am user gregorystill." User data obtained from the forensic image of the server revealed the above-listed BTC payment was linked to Welcome To Video username "gregorystill." Other transaction memos for payments from this account included "suscripcopm [sic] naughty" and "I [sic] buy a 1 month suscription [sic]."

   a. This account also laundered 0.012 BTC with the memo "it is the buy for you" to a cluster of BTC addresses which then laundered BTC to Welcome To Video. The recipient of this payment previously sent BTC to the account "pteen," (which is an abbreviation for "preteen") at Welcome To Video.

   b. This cluster of BTC addresses was used to receive payment from the sale of child exploitation material, based on a review of other payments to this clustered address. Specifically, the cluster received approximately 141 transactions during approximately two months, much of which originated from several BTC exchanges. The cluster then sent the funds to a BTC mixing service. Mixing services are companies, often on the darknet, that mix all the payments received from numerous users together in order to conceal where the money comes from and where it goes.

   c. In summary, the account owner opened his BTC Exchange 1 account on or about May 14, 2016, funded the account over the next few days, then only sent four payments, one directly to Welcome To Video and three to a cluster that subsequently laundered BTC to Welcome To Video.

19. BTC Exchange 1 account **56d3b1cc9f49041768000086** – On or about December 6, 2016, and January 29, 2017, this account laundered two payments to a BTC address controlled by Welcome To Video totaling approximately 0.090 BTC. User data obtained from the forensic image of the server revealed the above-listed BTC payments were linked to Welcome To Video username "hamburger," who downloaded at least 130 videos from Welcome To Video.

    a. On August 16, 2018, law enforcement executed a search warrant at the account owner's residence in relation to this investigation and located child exploitation material on his electronic devices.

**b) BTC Exchange 2**

20. BTC Exchange 2 account **Francoca.87** – On or about May 27, 2017, this account laundered approximately 0.020 BTC to a BTC address controlled by Welcome To Video. User data obtained from the forensic image of the server revealed the above-listed BTC payment was linked to Welcome To Video username "fsdfds465456," who downloaded at least 15 videos from Welcome To Video.

21. BTC Exchange 2 account **ihackgeek** did not have a registered name or associated email address. The account had a phone number with an Eastern European country code, and the IP log showed consistent access from Eastern Europe, namely Ukraine and Russia. The account only had one BTC transaction. On or about May 27, 2017, this account laundered approximately 0.0116 BTC to a BTC address controlled by Welcome To Video. User data obtained from the forensic image of the server revealed the above-listed BTC payment was linked to Welcome To

Video username "ihackgeek," who downloaded at least 87 videos with an approximate total size of 9,286.5 MBs.

22. BTC Exchange 2 account **Um2541** did not have a registered name but had an associated email address and logins from IP addresses exclusively from South Korea. On or about August 31, 2017, this account laundered approximately 0.010 BTC to a BTC address controlled by Welcome To Video. User data obtained from the forensic image of the server revealed the above-listed BTC payment was linked to Welcome To Video username "um2525," who downloaded at least 81 videos from Welcome To Video.

   a. The account owner subsequently asked law enforcement "if you stopped my account because I received a video on Deep Web."

**c)   BTC Exchange 3**

23. BTC Exchange 3 account **longhorn1** had no registered name, but had an associated email address and a phone number with an Austin, Texas area code. On or about April 26, 2016, this account laundered approximately 0.1808 BTC to a BTC address controlled by Welcome To Video. User data obtained from the forensic image of the server revealed the above-listed BTC payment was linked to Welcome To Video username "mexman16."

   a. This account also laundered 0.05 BTC to the same cluster of BTC addresses that laundered BTC to the account "pteen" at Welcome To Video.

   b. This account also laundered 0.2508 BTC to a cluster of BTC address that sent approximately 0.48643035 BTC in 10 transactions to Welcome To Video. This second cluster sent a substantial portion of funds

(approximately 1,000 BTC) to a darknet mixing service that openly advertises that it launders funds for anyone that wants to conceal their illicit payments.

24. BTC Exchange 3 account **culboy2012** had no registered name, but had an associated email address. On or about November 12, 2015, this account was created and funded in under 30 minutes, and within two hours the user laundered approximately 0.1308 BTC to a BTC address controlled by Welcome To Video. The account was never logged into again. User data obtained from the forensic image of the server revealed the above-listed BTC payment was linked to Welcome To Video username "billvssharon."

## PROCEDURAL HISTORY

The United States filed its Verified Complaint for Forfeiture *In Rem* on October 16, 2019. *See* ECF 1. On April 2, 2020, the Clerk of the Court entered a Warrant for Arrest *In Rem*. *See* ECF 2.

On November 21, 2019, the United States commenced notification of this forfeiture action via publication on an internet site, http://www.forfeiture.gov, for 30 consecutive days.[4] Publication ended on December 20, 2019. Thus, claims based on publication were due by January

---

[4] The Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions ("Supplemental Rules") govern civil forfeiture actions *in rem* arising from a federal statute. *See* Supplemental Rule A(1)(B). The Federal Rules of Civil Procedure also apply, except to the extent they are inconsistent with the Supplemental Rules. *See* Supp. Rule A(2). Supplemental Rule G(4) governs the process by which the government must serve notice of the Complaint. Notice is required to the public via publication, as well as to potential claimants via direct notice. Supp. Rule G(4).

19, 2020. *See* Supp. Rule G(5)(a)(ii); Notice of Publication (ECF 3). No party filed a claim based on publication, and the time to do so has expired. *See* Affidavit of Service (ECF 12).

In addition to this public notice, the United States identified potential claimants as to the Defendant Properties in the United States and abroad.[5] On or about December 27, 2019, the United States sent notice to the known potential claimants via email and certified mail. *See* Affidavit In Support of Default (ECF 8); Clerk's Entry of Default as to *In Rem* Defendants (ECF 10). Many claimants received notice via such method; however some notices were returned as undeliverable or no receipt was returned. On or about May 4, 2020, the United States re-noticed the known potential claimants who did not previously receive notice. In response to the direct notice, the potential claimants had to file a verified claim with this Court within 35 days of the service, that is, no later than January 31, 2020 or June 8, 2020 (depending on the date of service). This deadline passed without any potential claimants filing a claim as to the Defendant Properties. *See id*.

On June 23, 2020, the Clerk of the Court entered default as to the Defendant Properties. *See* Clerk's Entry of Default as to *In Rem* Defendants (ECF 10); Fed. R. Civ. P. Rule 55(a) (clerk must enter default when a party has failed to plead or otherwise defend). This matter is now ripe for entry of default judgment against the Defendant Properties.

## **STANDARDS FOR ENTRY OF DEFAULT JUDGMENT**

In cases where the claim is not for a "sum certain" or a sum that can be computed with certainty, the party seeking a default judgment must apply to the court. *See* Fed. R. Civ. P. 55(b)(2); *see also Canady v. Erbe Elektromedizin GMBH*, 307 F. Supp. 2d 2, 8-9 (D.D.C. 2004); *United*

---

[5] Supplemental Rule G also requires that the government send direct notice "to any person who reasonably appears to be a potential claimant on the facts known to the government." Supp. Rule G(4)(b)(i).

*States v. Gant*, 268 F. Supp. 2d 29, 32 (D.D.C. 2003). The court has the power to enter default judgment "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend as provided by these rules." Fed. R. Civ. P. 55(a); *Int'l Painters & Allied Trades Indus. Pension Fund v. Zak Architectural Metal & Glass, LLC*, 635 F. Supp. 2d 21, 23 (D.D.C. 2009) (citing *Keegel v. Key W. & Caribbean Trading Co.*, 627 F.2d 372, 375 n. 5 (D.C. Cir.1980)). This authority applies equally in the context of a civil forfeiture action. *See, e.g., United States v. $23,000 in U.S. Currency*, 356 F.3d 157, 163 (1st Cir. 2004) (Rule 55 applies equally in the civil forfeiture context); *United States v. $6,500.00 in U.S. Currency*, No. 1:10-cv-327, 2010 WL 4365886, at *1 (E.D. Tex. Nov. 2, 2010), *report & recommendation adopted sub nom. United States v. & 6,500.00 in U.S. Currency*, No. 1:10-CV-327, 2010 WL 4365890, at *1 (E.D. Tex. Nov. 3, 2010). Default judgment is available "when the adversary process has been halted because of an essentially unresponsive party . . . [as] the diligent party must be protected lest he be faced with interminable delay and continued uncertainty as to his rights." *Jackson v. Beech*, 636 F.2d 831, 836 (D.C. Cir.1980) (quoting *H.F. Livermore Corp. v. Aktiengesellschaft Gebruder Loepfe*, 432 F.2d 689, 691 (D.C.Cir.1970)).

Although there is a general policy favoring decisions on the merits, if potential claimants fail to respond to a complaint, "a decision on the merits is impractical, if not impossible." *United States v. Approximately $45,860 in U.S. Currency*, No. 14-CV-03801-JCS, 2015 WL 1387468, at *4 (N.D. Cal. Mar. 24, 2015). "A denial of default judgment would prejudice the government in that it would be required to expend further time and effort in an action where no claimants [] have appeared. Without a default judgment, the government may be without recourse altogether." *United States v. Real Prop. & Improvements Located at 929 Clay St., Unit #7, San Francisco, CA*, No. 15-CV-00010-JD, 2015 WL 3547256, at *3 (N.D. Cal. June 5, 2015).

The court's primary inquiry when considering default is whether notice has been adequately served, and whether any party filed a timely claim. *See United States v. $4,620 in U.S. Currency*, 779 F. Supp. 2d 65, 67 (D.D.C. 2011) (default was appropriate because the government "provided sufficient notice of the seizure of the defendant property," and no party filed a timely claim); *see also United States v. Remington, Model 58, 12 Gauge Shotgun, SN: £9181V*, No. 1:11-CV-330, 2012 WL 1466684, at *1 (E.D. Tex. Feb. 7, 2012), report and recommendation adopted, No. 1:11-cv-330, 2012 WL 1466682 (E.D. Tex. Apr. 26, 2012) (default judgment entered upon showing government's compliance with Supplemental Rule G(4)); *United States v. 1999 Lexus GS400*, No. C 05–1139, 2007 WL 1056791, *2-3 (N.D. Cal. 2007) ("Default may be entered upon a showing that: (a) notice has been given as required by Admiralty Local Rule 6–1; (b) the time to answer has expired; and (c) no one has appeared to claim the property.").

Assuming proper notice, the court's second consideration before entering default judgment is whether the complaint establishes a reasonable belief of forfeitability. *See United States v. $1,071,251.44 of Funds Associated with Mingzheng Int'l Trading Ltd.*, No. 17-cv-01166, 2018 WL 3949962, at *4 (D.D.C. June 29, 2018) (*citing United States v. All Assets Held at Bank Julius Baer & Co., Ltd.*, 571 F. Supp. 2d 1, 16 (D.D.C. 2008), report and recommendation adopted, No. 17-CV-1166, 2018 WL 3941949 (D.D.C. Aug. 15, 2018). "Default establishes the defaulting party's liability for the well-pleaded allegations of the complaint." *Boland v. Smith & Rogers Constr. Ltd.*, 201 F. Supp. 3d 144, 147 (D.D.C. 2016); *see also Int'l Painters & Allied Trades Indus. Pension Fund v. Dettrey's Allstate Painting, LLC*, 763 F. Supp. 2d 32, 34 (D.D.C. 2011) (same) (citing *Adkins v. Teseo*, 180 F.Supp.2d 15, 17 (D.D.C. 2001) (same)). A court must treat "the factual allegations in a complaint, other than those as to damages . . . as conceded by the defendant." *DIRECTV, Inc. v. Pepe*, 431 F.3d 162, 165 (3d Cir.2005); *see also Int'l Painters & Allied Trades*

*Indus. Pension Fund v. R. W. Amrine Drywall Co., Inc.*, 239 F. Supp. 2d 26, 30 (D.D.C. 2002) (the "defaulting defendant is deemed to admit every well-pleaded allegation in the complaint" upon entry of default by the clerk) (citation omitted).

## ARGUMENT

The Clerk of Court properly entered default the Defendant Properties, pursuant to Rule 55(a), upon the United States' showing that these defendants and any related claimants failed to plead or otherwise defend this action. *See* Clerk's Entry of Default as to *In Rem* Defendants (ECF 10). Moreover, the well-pleaded allegations of the Complaint establish *prima facie* forfeitability of the Defendant Properties, namely: twenty-four cryptocurrency accounts. Thus, default judgment is appropriate. *See United States v. 8 Gilcrease Lane, Quincy, Fla. 32351,* 638 F.3d 297, 299 (D.C. Cir. 2011) (upholding district court's order for default judgment and final order of forfeiture, because there were no valid claims); *United States v. $9,928.00 in U.S. Currency*, 10-cv-1728, 2012 WL 1004873, at *1 (D.D.C. Mar. 27, 2012) (ordering default where government submitted affidavit certifying that it gave appropriate notice and that no claims were filed); *United States v. $4,620 in U.S. Currency*, 779 F. Supp. 2d 65, 67 (D.D.C. 2011) (ordering default where court struck sole claimant's claim, leaving no claimants to the defendant funds).

### I.      The United States has satisfied its notice obligations.

The United States must send direct notice "to any person who reasonably appears to be a potential claimant on the facts known to the government" and publish public notice as well. Supp. Rule G(4)(b)(i). "Reasonable notice" requires only that the government attempt to provide actual notice, but it does not require proof that the notice was received. *See Valderrama v. United States*, 417 F. 3d 1189, 1197 (11th Cir. 2005); *United States v. Funds Up to & including the Amount of $56,634 in U.S. Currency on Deposit in Banesco Int'l, Panama*, 79 F. Supp. 3d 112, 114 (D.D.C.

2015) (notice was adequate based on public notice on the government's forfeiture website). Where "the government attempted to provide notice and heard nothing back indicating that anything had gone awry, courts have found the government's efforts comply with due process." *Lewis v. United States*, No. 14-cv-496, 2014 WL 6065538, at *6 (S.D. Cal. Nov. 3, 2014) (citing *Jones v. Flowers*, 547 U.S. 220, 226 (2006)).

There were twenty-four potential claimants for the Defendant Properties. The United States subpoenaed the BTC Exchanges, which are required "by U.S. law to collect identifying information on [their] customers." *United States v. Galarza*, 2019 WL 2028710, at *2 (D.D.C. May 8, 2019). This know-your-customer (KYC) information provided "compelling evidence" regarding "the website user who uploaded and downloaded child pornography to and from the CP Website." *Id.* However, not all of the BTC Exchanges collected such data, or in some cases had incomplete data. For example, BTC Exchange 2 and BTC Exchange 3 failed to collect any name or address information from three potential claimants.

The government relied on the customer-provided KYC data to locate and notice potential claimants. *See In re Sowell*, No. 08-51163, 2009 WL 799570, at *2 (E.D. Mich. Mar. 19, 2009) (notice was adequate where government mailed notice to address on file from driver's license). Notice occurred as follows:

- The BTC Exchanges provided physical mailing addresses for nineteen of the potential claimants. On or about December 27, 2019, the government mailed notice to each of these addresses. Six of these notice packets were returned. Several notice packets were not returned, but it is unclear whether the packets were received.

- The BTC Exchanges provided e-mail addresses for twenty-three of the twenty four potential claimants. On or about December 27, 2019, the government e-mailed notice

to each of these addresses. Twenty of the emails were successfully sent, while four "bounced back" (*i.e.*, the email address was no longer active).

- On or about May 4, 2020, the United States resent notice via first class mail to any potential claimant for whom notice was unsuccessful via mail or email.

- Ultimately, all but two potential claimants received direct notice either once or twice.

  o One potential claimant provided no email or mailing address.

  o One potential claimant provided no mailing address, and his/her email address was invalid (*i.e.*, "bounce back").

Sending notice twice meets the notice standard for civil forfeitures. *See VanHorn v. D.E.A.*, 677 F. Supp. 2d 1299, 1310–11 (M.D. Fla. 2009) (citing *Flowers,* 547 U.S. at 230, 126 S.Ct. 1708 ("[W]hen a letter is returned by the post office, the sender will ordinarily attempt to re-send it, if it is practicable to do so.") (citing *Small v. United States,* 136 F.3d 1334, 1337 (D.C.Cir.1998)).

Email service was appropriate here. For *in personam* matters, which are governed by a different statutory-notice framework, courts have generally permitted service by email. *See Bazarian Int'l Fin. Assocs., L.L.C. v. Desarrollos Aerohotelco, C.A.*, 168 F. Supp. 3d 1, 17 (D.D.C. 2016) (collecting cases approving email service); *see also Rio Properties, Inc. v. Rio Int'l Interlink*, 284 F.3d 1007, 1016 (9th Cir. 2002) (9th Cir. 2002) (allowing the plaintiff to serve the defendant, a foreign Internet business entity, via email). Service by email and other electronic means is common, especially in cases involving evasive international defendants or hard-to-reach defendants. *See Fed. Trade Comm'n v. PCCare247, Inc.*, No. 12 Civ. 7189, 2013 WL 841037, at *4 (S.D.N.Y. Mar. 7, 2013) (permitting service to the defendants by both email and Facebook, because it was "reasonably calculated to provide defendants with notice"); *see also* Melodie M. Dan, *Social Networking Sites: A Reasonably Calculated Method to Effect Service of Process*, 1

Case W. Reserve J. L. Tech. & Internet 183, 201 (2010). E-mail service is particularly appropriate here, where the potential claimants conducted their crimes on the darknet using cryptocurrency, thus demonstrating their cyber proficiency, and BTC Exchanges generally communicate with their customers via email. *See PCCare247*, 2013 WL 841037, at *4 (citing *Philip Morris USA Inc. v. Veles Ltd.*, No. 06 Civ. 2988, 2007 WL 725412, at *3 (S.D.N.Y. Mar. 12, 2007) (noting email service was appropriate because the party conducted business "extensively, if not exclusively, through their Internet websites and correspond regularly with customers via email.").

Ultimately, the United States satisfied its notice obligations by publishing its action on the government's forfeiture website. *See Johnson v. United States*, No. 1:03-CV-00281, 2004 WL 2538649, at *4 (S.D. Ind. Oct. 22, 2004). "[T]he government may satisfy due process with mere publication of a forfeiture notice when the government does not know or reasonably cannot discover the claimant's whereabouts." *Id.* Thus, publication covers the only two potential claimants for whom there was no contact information. Additionally, this action was the subject of much international press coverage, *see*, *e.g.*, https://www.wsj.com/articles/how-investigators-busted-a-huge-online-child-porn-site-11574769602; https://www.cnn.com/2019/10/19/asia/south-korea-child-exploitation-international-police-intl-hnk/index.html, creating a reasonable inference that the potential claimants had actual notice of the forfeiture action. "A potential claimant who had actual notice of a forfeiture action may not oppose or seek relief from forfeiture because of the government's failure to send the required notice." Supp. Rule G(4)(b)(iv).

## II.   **Default judgment is appropriate because the Complaint provides a well-pleaded basis for relief.**

### A.   The Complaint Pleads Sufficient Facts.

The well-pleaded facts in the United States' Complaint establish a reasonable belief of forfeitability on which the Court may enter judgment. The Defendant Properties are subject to civil forfeiture pursuant to 18 U.S.C. §§ 2253(a)(3) and 2254 as personal property used to promote the commission of child exploitation offenses.[6]

The facts, which must be taken to be true, sufficiently plead a reasonable belief of forfeitability, because the United States has specified:

-   the perpetrators of the child pornography scheme (the twenty-four account holders), *see e.g.,* Complaint (ECF 1) at ¶ 25;

-   victims of the scheme (children depicted in the videos), *see id.* at ¶ 18;

-   the goal of the scheme (to promote the expansion and distribution of a darknet child pornography site using cryptocurrency), *see e.g.,* ¶ 14;

-   the means of effectuating the goals (uploading child pornography to the site and laundering funds via cryptocurrency to obtain such content from the site), *see e.g.,* ¶¶ 9, 14; and

-   who was responsible for which acts (the administrator for establishing the site, uploaders for adding content to the site, and downloaders for laundering funds to purchase content from the site), *see id.*

This satisfies the threshold questions for default. *See United States v. All Assets Held In Account No. XXXXXXXX*, 83 F. Supp. 3d 360, 373 (D.D.C. 2015) (complaint sufficiently pled a reasonable

---

[6] The Defendant Properties are also subject to forfeiture pursuant to 18 U.S.C. § 981(a)(1)(A), as property involved in international money laundering, in violation of 18 U.S.C. § 1956; however, the Court need not consider that theory in the alternative, as the property is forfeitable directly as part of the child pornography offenses.

belief of forfeitability, because the government specified the victim of the alleged fraud; the perpetrators of the alleged fraud; the goal of the fraud; the means of effectuating the fraud; and which members of the fraud were responsible for which acts).

B. Broad Child Pornography Forfeiture Authorities Are Satisfied Here.

The complaint alleges, *inter alia*, that the Defendant Properties were personal properties used to promote the commission of violations of:

- 18 U.S.C. § 2252(a)(2), that is, by receiving any visual depiction which contains materials depicting a minor engaging in sexually explicit conduct, which have been mailed or shipped or transported by computer; and

- 18 U.S.C. § 2252(a)(4)(B), that is, by possessing and/or accessing with intent to view a depiction of a minor engaged in sexually explicit conduct.

    i.    Taking all facts to be true, the government has shown a reasonable belief that it met the elements of these two related offenses.

"To prove the offenses, the Government had to show [account holders] 'knowingly receive[d]' and 'knowingly possesse[d]' a 'visual depiction' involving 'the use of a minor engaging in sexually explicit conduct[,]' 18 U.S.C. §§ 2252(a)(2), (a)(4)(B)." *United States v. Wagner*, 951 F.3d 1232, 1256 (10th Cir. 2020). "[K]nowingly means the act was done voluntarily and intentionally, and not because of mistake or accident." *Id.* at 1257 (internal quotation marks and citation omitted). "To receive a visual depiction means to take possession or accept delivery of it and includes download[ing] an image from the [I]nternet." *Id.* (internal quotation marks and citation omitted). "[P]ossession may be actual or constructive and generally means to own or to exert control over [an] object." *Id.* (internal quotation marks and citation omitted).

"[S]everal circuit courts have held that membership in a child pornography website alone sufficiently establishes probable cause, reasoning that an individual who took the affirmative steps necessary to become a member probably accessed or contributed to the site's illegal content." *United States v. Taylor*, 250 F. Supp. 3d 1215, 1230–31 (N.D. Ala. 2017), aff'd, 935 F.3d 1279 (11th Cir. 2019) (collecting cases). Records from Welcome To Video server showed that on the dates identified above, the respective users "logged into" the site, and purchased content to download. *See Wagner*, 951 F.3d at 1257. "Subpoenaed records [from the BTC Exchanges] established that [the BTC accounts were] registered to [the site users]." *Id.* (upholding conviction for customer of child pornography site accessed via Tor). "Any user logging into the [website] would have had to take these steps: (1) download Tor software; (2) acquire the website's unique algorithm-generated address (most likely from a [website] user or from another Tor hidden service page . . . ); (3) navigate to [the website], featuring suggestive images … with directions regarding file uploading and posting; (4) create a [website] account . . . ; and (5) arrive at the main [website] directory, which included forum titles that clearly alluded to illicit pornographic content of children," *id.* These "numerous affirmative steps" provide a reasonable belief that any user laundering BTC to the website "did so with the intent to access, view, and/or distribute child pornography; *i.e.*, to engage in criminal conduct." *Taylor*, 250 F. Supp. 3d at 1230.

"The access-with-intent offense is complete the moment that the elements of access and intent coincide. 18 U.S.C. § 2252A(a)(5)(B)." *United States v. Tagg*, 886 F.3d 579, 587 (6th Cir. 2018). "Thus, even if the person never viewed illegal child pornography, knowingly accessing a child-pornography website with the intent to view illegal materials is itself a criminal act." *Id.* "Grammatically, the word 'accesses' (the actus reus of the crime) is directed towards the repository containing child pornography, not the child pornography itself." *Id.* Thus, there is a reasonable

26

belief that the users identified above accessed Welcome to Video with the intent to view child pornography. *Id.*

"The person who completes the circle and views the image has, instead, committed the actus reus of possession." *Tagg*, 886 F.3d at 588. In fact, "it is common sense that a person who voluntarily joins a group such as [a website whose sole purpose was the exchange of child pornography] . . . would download such pornography from the website and have it in his possession." *United States v. Froman*, 355 F.3d 882, 890–91 (5th Cir. 2004).

        ii.    <u>Child pornography offenses have broad authority allowing for the forfeiture of the Defendant Properties.</u>

The above child pornography offenses allow for forfeiture of property "used to promote the commission of child exploitation offenses." 18 U.S.C. §§ 2253(a)(3) and 2254. Property, such as a residence, is forfeitable if it provides a person with privacy and freedom from outside scrutiny, thereby facilitating the child pornography offense. *See United States v. Hull*, 606 F.3d 524, 528 (8th Cir. 2010) (house where defendant used the computer to solicit sex from children and distribute child pornography was "used to commit" the offense, because it provided privacy and freedom from outside scrutiny); *United States v. Wilk*, 2007 WL 2263942, *1 (S.D. Fla. Aug. 6, 2007) (residence where defendant used computers to download 90 images of minors engaged in explicit sexual activity forfeitable as facilitating property because the privacy of the home allowed the defendant to operate without fear of discovery); *United States v. 7046 Park Vista Rd.*, 537 F. Supp. 2d 929, 941-42 (S.D. Ohio 2008) (residence where defendant videotaped himself spanking naked children was "crucial and necessary" to the commission of the offense because the defendant needed privacy to remain undetected); and *United States v. Ownby*, 926 F. Supp. 558, 566 (W.D. Va. 1996) (overruling defendant's objection that forfeiture of residence in which he used a computer to possess, receive and transport child pornography was excessive, finding that the

privacy afforded by the dwelling was essential to the commission of the offense), *aff'd* 131 F.3d 138 (4th Cir. 1997). The BTC accounts comprising the Defendant Properties provided privacy and freedom from outside scrutiny, which is why customers used them to pay into the Welcome To Video website.

Property "used to commit" an offense is also a basis to forfeit such property. *United States v. Hull*, 606 F.3d 524, 528 (8th Cir. 2010). "The ordinary meaning of 'use' is '[t]o convert to one's service,' 'to employ,' 'to avail oneself of,' and 'to carry out a purpose or action by means of.'" *Id.* (citation omitted). In the present case, each BTC account was used to send money to Welcome To Video. Just as the residence in the above-cited cases were used for legitimate ends, so to could the Defendant Properties be used for other legitimate purposes; nevertheless, each account was also "used to commit" the child pornography offenses.

## CONCLUSION

For the foregoing reasons, and upon consideration of the record in this case, including a showing of compliance with applicable rules regarding service of process and notice by publication, the default entered by the Clerk of the Court, and taking the well-pleaded allegations of the Complaint as true, the United States respectfully requests that its motion for entry of default judgment be granted. As reflected in the proposed order accompanying the Motion, the United States asks specifically that the Court order the Defendant Properties, be forfeited to the United States.

Respectfully submitted,

MICHAEL R. SHERWIN, N.Y. Bar No. 444188
Acting U.S. Attorney for the District of Columbia

By:        /s/  *Zia Faruqui*        
ZIA M. FARUQUI, D.C. Bar No. 494990
Lindsay Suttenberg, D.C. Bar No. 978513
Assistant United States Attorneys
555 Fourth Street, N.W.
Washington, D.C.  20530
(202) 252-7117 (Faruqui)

        /s/ *Alden Pelker*        
C. ALDEN PELKER
Trial Attorney
Computer Crime & Intellectual Property Section
1301 New York Ave NW
Washington, D.C. 20005
(202) 514-1026

June 24, 2020                *Attorneys for the United States of America*