UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>    v.<br><br>TWENTY-FOUR CRYPTOCURRENCY ACCOUNTS,<br><br>    Defendant *In Rem* | Civil Action No. 19-cv-3098 (DLF) |

## DEFAULT JUDGMENT AND ORDER OF FORFEITURE

This matter comes before the Court upon the United States' Motion for Entry of Default Judgment, as well as the Memorandum of Points and Authorities submitted in support of it.

The Court has carefully reviewed the history of this case, which is a civil forfeiture action *in rem* against defendant properties, namely: twenty-four cryptocurrency accounts (the "Defendant Properties"), which are described in Attachment A.

## FACTUAL BACKGROUND

This *in rem* action arises out of an investigation by the Internal Revenue Service – Criminal Investigation's Cyber Crimes Unit ("IRS-CI") and Homeland Security Investigations ("HSI") into a child exploitation material website named Welcome To Video. Welcome To Video was a Tor[1] network-based child exploitation material website, which began operating in or before June 2015. Welcome To Video hosted and distributed image and video files depicting child exploitation

---

[1] Tor is a computer network which anonymizes Internet activity by routing a user's communications through a global network of relay computers (or proxies), thus effectively masking the Internet Protocol ("IP") address of the user.

material. The upload page on Welcome To Video stated: "Do not upload **adult** porn." Complaint (ECF 1) at ¶ 9 (emphasis in original).

On or about February 8, 2018, Welcome To Video indicated on its download page that its users had downloaded files from Welcome To Video more than a million times. As of on or about March 5, 2018, Welcome to Video had over 200,000 unique video files, which totaled approximately eight terabytes of data. As files were uploaded by users, Welcome to Video compared the video's hash to previously uploaded videos to ensure each upload was unique. Each video had a title, a description (if included by the uploader), "tags" with further descriptions of the video, and a preview thumbnail image that contained approximately sixteen unique still images from the video. Complaint (ECF 1) at ¶ 11.

The video search page of Welcome To Video listed keyword search terms and the number of videos associated with each keyword. On or about February 8, 2018, some of the top keyword search terms and the associated approximate videos included "PTHC," "PEDO," "%2yo," "%4yo," and "incest."

      a. "PTHC" is an abbreviation for "preteen hardcore."

      b. "PEDO" is an abbreviation for "pedophile."

      c. "%2yo" is an abbreviation for "2-year-old."

      d. "%4yo" is an abbreviation for "4-year-old."

To access the site, customers created a free account on Welcome To Video by creating a username and password, but supplied no other identifiable information such as an email address. Once a customer had an account, the customer could browse picture previews of videos depicting child exploitation material that were available for download.

In order to download videos from Welcome To Video, customers were required to redeem "points." Points could be obtained by: (1) uploading videos depicting child exploitation material; (2) referring new customers to Welcome To Video; (3) paying 0.03 bitcoin[2] (BTC) (approximately $352.59 as of March 5, 2018) for a "VIP" account, which lasted for six months and purportedly allowed unlimited downloads; and/or (4) paying for points incrementally (*i.e.*, 0.02 BTC for 230 points). Points were not transferable to any other website or application. Once BTC were sent to Welcome To Video, they could not be refunded or redirected. Points obtained by the payment of BTC could only be used for downloading videos. Once a user uploaded videos depicting child exploitation material to Welcome To Video, the uploader was unable to delete the video. However, the administrator retained access to these videos and all BTC accumulated by Welcome To Video.

Welcome To Video directed customers to particular BTC exchanges[3] to make payments, including an exchange in the United States. Welcome To Video assigned a unique BTC address, the BTC equivalent of an anonymous account number, for each Welcome To Video customer account to receive payments and assign points appropriately. Welcome To Video set up over 1.3 million BTC addresses.

Throughout the course of the investigation, law enforcement gathered a list of thousands of unique BTC addresses associated with Welcome To Video. This list included an undercover agent's BTC address which Welcome To Video assigned to the undercover agent when the

---

[2] Bitcoin is a cryptocurrency circulated over the Internet as a form of value and medium of exchange.

[3] A BTC exchange is a business that allows users to exchange government-backed currencies, such as U.S. dollars, or other virtual currencies, for BTC, and vice versa. Many BTC exchanges also allow users to store BTC in accounts held with the exchange.

undercover agent created an account on Welcome To Video. From in or about June 2015 to on or about March 8, 2018, Welcome To Video received at least 240 BTC through at least 7,300 transactions. Transactions originated in numerous countries, including the United States, the United Kingdom, and South Korea.

On multiple occasions, the agent acting in an undercover capacity paid BTC to Welcome To Video and used the website to download child exploitation material video files while in Washington, D.C. These child exploitation material video files included pre-pubescent children, infants, and toddlers engaged in sexually explicit conduct.

On or about March 5, 2018, South Korean law enforcement seized Welcome To Video's server and associated electronic storage media. U.S. law enforcement subsequently received a forensic image of the Welcome To Video server. A review of the imaged data confirmed that Welcome to Video was hosted on the seized server. A review of a sample of the video files further corroborated that Welcome To Video was dedicated to distribution of child exploitation material. The customer data generally identified the customer was associated with BTC payments made to Welcome To Video. A review of a sample of the payments to Welcome To Video cross-referenced against the username and download data from the server revealed that payments to Welcome To Video corresponded with the user downloading videos from Welcome To Video. A review of the forensic image of the server further revealed that certain Welcome To Video co-conspirators uploaded illicit content to the site.

The Defendant Properties

Analyzing the blockchain, BTC's public transaction ledger, revealed BTC addresses that laundered BTC to Welcome To Video from accounts hosted at BTC Exchange 1, BTC Exchange

2, and BTC Exchange 3 (collectively, the "BTC Exchanges"). The BTC Exchanges are all cryptocurrency exchanges offering services to customers worldwide, including the storing of cryptocurrency in online "wallets." Law enforcement discovered the accounts at the BTC Exchanges, which comprise the Defendant Properties. Through its complaint, the government demonstrated the each of the Defendant Properties sent funds to Welcome To Video, in order to download child exploitation videos.

## ANALYSIS

The Clerk of Court properly entered default the Defendant Properties, pursuant to Rule 55(a), upon the United States' showing that these defendants and any related claimants failed to plead or otherwise defend this action. *See* Clerk's Entry of Default as to *In Rem* Defendants (ECF 10). Moreover, the well-pleaded allegations of the Complaint establish *prima facie* forfeitability of the Defendant Properties, namely: twenty-four cryptocurrency accounts. Thus, default judgment is appropriate. *See United States v. 8 Gilcrease Lane, Quincy, Fla. 32351,* 638 F.3d 297, 299 (D.C. Cir. 2011) (upholding district court's order for default judgment and final order of forfeiture, because there were no valid claims); *United States v. $9,928.00 in U.S. Currency*, 10-cv-1728, 2012 WL 1004873, at *1 (D.D.C. Mar. 27, 2012) (ordering default where government submitted affidavit certifying that it gave appropriate notice and that no claims were filed); *United States v. $4,620 in U.S. Currency*, 779 F. Supp. 2d 65, 67 (D.D.C. 2011) (ordering default where court struck sole claimant's claim, leaving no claimants to the defendant funds).

A. <u>Notice Was Adequate</u>

The United States must send direct notice "to any person who reasonably appears to be a potential claimant on the facts known to the government" and publish public notice as well. Supp.

Rule G(4)(b)(i). "Reasonable notice" requires only that the government attempt to provide actual notice, but it does not require proof that the notice was received. *See Valderrama v. United States*, 417 F. 3d 1189, 1197 (11th Cir. 2005); *United States v. Funds Up to & including the Amount of $56,634 in U.S. Currency on Deposit in Banesco Int'l, Panama*, 79 F. Supp. 3d 112, 114 (D.D.C. 2015) (notice was adequate based on public notice on the government's forfeiture website). Where "the government attempted to provide notice and heard nothing back indicating that anything had gone awry, courts have found the government's efforts comply with due process." *Lewis v. United States*, No. 14-cv-496, 2014 WL 6065538, at *6 (S.D. Cal. Nov. 3, 2014) (citing *Jones v. Flowers,* 547 U.S. 220, 226 (2006)).

There were twenty-four potential claimants for the Defendant Properties. The United States subpoenaed the BTC Exchanges, which are required "by U.S. law to collect identifying information on [their] customers." *United States v. Galarza*, 2019 WL 2028710, at *2 (D.D.C. May 8, 2019). This know-your-customer (KYC) information provided "compelling evidence" regarding "the website user who uploaded and downloaded child pornography to and from the CP Website." *Id.* However, not all of the BTC Exchanges collected such data, or in some cases had incomplete data. For example, BTC Exchange 2 and BTC Exchange 3 failed to collect any name or address information from three potential claimants.

The government appropriate relied on the customer-provided KYC data to locate and notice potential claimants. *See In re Sowell*, No. 08-51163, 2009 WL 799570, at *2 (E.D. Mich. Mar. 19, 2009) (notice was adequate where government mailed notice to address on file from driver's license). Notice occurred as follows:

- The BTC Exchanges provided physical mailing addresses for nineteen of the potential claimants. On or about December 27, 2019, the government mailed notice to each of these addresses. Six of these notice packets were returned. Several notice packets were not returned, but it is unclear whether the packets were received.

- The BTC Exchanges provided e-mail addresses for twenty-three of the twenty four potential claimants. On or about December 27, 2019, the government e-mailed notice to each of these addresses. Twenty of the emails were successfully sent, while four "bounced back" (*i.e.*, the email address was no longer active).

- On or about May 4, 2020, the United States resent notice via first class mail to any potential claimant for whom notice was unsuccessful via mail or email.

- Ultimately, all but two potential claimants received direct notice either once or twice.

    o One potential claimant provided no email or mailing address.

    o One potential claimant provided no mailing address, and his/her email address was invalid (*i.e.*, "bounce back").

Sending notice twice meets the notice standard for civil forfeitures. *See VanHorn v. D.E.A.*, 677 F. Supp. 2d 1299, 1310–11 (M.D. Fla. 2009) (citing *Flowers,* 547 U.S. at 230, 126 S.Ct. 1708 ("[W]hen a letter is returned by the post office, the sender will ordinarily attempt to re-send it, if it is practicable to do so.") (citing *Small v. United States,* 136 F.3d 1334, 1337 (D.C.Cir.1998)).

Email service was appropriate here. For *in personam* matters, which are governed by a different statutory-notice framework, courts have generally permitted service by email. *See Bazarian Int'l Fin. Assocs., L.L.C. v. Desarrollos Aerohotelco, C.A.*, 168 F. Supp. 3d 1, 17 (D.D.C. 2016) (collecting cases approving email service); *see also Rio Properties, Inc. v. Rio Int'l Interlink*,

284 F.3d 1007, 1016 (9th Cir. 2002) (9th Cir. 2002) (allowing the plaintiff to serve the defendant, a foreign Internet business entity, via email). Service by email and other electronic means is common, especially in cases involving evasive international defendants or hard-to-reach defendants. *See Fed. Trade Comm'n v. PCCare247, Inc.*, No. 12 Civ. 7189, 2013 WL 841037, at *4 (S.D.N.Y. Mar. 7, 2013) (permitting service to the defendants by both email and Facebook, because it was "reasonably calculated to provide defendants with notice"); *see also* Melodie M. Dan, *Social Networking Sites: A Reasonably Calculated Method to Effect Service of Process*, 1 Case W. Reserve J. L. Tech. & Internet 183, 201 (2010). E-mail service is particularly appropriate here, where the potential claimants conducted their crimes on the darknet using cryptocurrency, thus demonstrating their cyber proficiency, and BTC Exchanges generally communicate with their customers via email. *See PCCare247*, 2013 WL 841037, at *4 (citing *Philip Morris USA Inc. v. Veles Ltd.*, No. 06 Civ. 2988, 2007 WL 725412, at *3 (S.D.N.Y. Mar. 12, 2007) (noting email service was appropriate because the party conducted business "extensively, if not exclusively, through their Internet websites and correspond regularly with customers via email.").

Ultimately, the United States satisfied its notice obligations by publishing its action on the government's forfeiture website. *See Johnson v. United States*, No. 1:03-CV-00281, 2004 WL 2538649, at *4 (S.D. Ind. Oct. 22, 2004). "[T]he government may satisfy due process with mere publication of a forfeiture notice when the government does not know or reasonably cannot discover the claimant's whereabouts." *Id.* Thus, publication covers the only two potential claimants for whom there was no contact information. Additionally, this action was the subject of much international press coverage, *see*, *e.g.*, https://www.wsj.com/articles/how-investigators-busted-a-huge-online-child-porn-site-11574769602; https://www.cnn.com/2019/10/19/asia/south-korea-

child-exploitation-international-police-intl-hnk/index.html, creating a reasonable inference that the potential claimants had actual notice of the forfeiture action. "A potential claimant who had actual notice of a forfeiture action may not oppose or seek relief from forfeiture because of the government's failure to send the required notice." Supp. Rule G(4)(b)(iv).

  B. The Complaint Pleads Sufficient Facts

The well-pleaded facts in the United States' Complaint establish a reasonable belief of forfeitability on which the Court may enter judgment. The Defendant Properties are subject to civil forfeiture pursuant to 18 U.S.C. §§ 2253(a)(3) and 2254 as personal property used to promote the commission of child exploitation offenses.[4]

The facts, which must be taken to be true, sufficiently plead a reasonable belief of forfeitability, because the United States has specified:

- the perpetrators of the child pornography scheme (the twenty-four account holders), *see e.g.,* Complaint (ECF 1) at ¶ 25;
- victims of the scheme (children depicted in the videos), *see id.* at ¶ 18;
- the goal of the scheme (to promote the expansion and distribution of a darknet child pornography site using cryptocurrency), *see e.g.,* ¶ 14;
- the means of effectuating the goals (uploading child pornography to the site and laundering funds via cryptocurrency to obtain such content from the site), *see e.g.,* ¶¶ 9, 14; and

---

[4] The Defendant Properties are also subject to forfeiture pursuant to 18 U.S.C. § 981(a)(1)(A), as property involved in international money laundering, in violation of 18 U.S.C. § 1956; however, the Court need not consider that theory in the alternative, as the property is forfeitable directly as part of the child pornography offenses.

- who was responsible for which acts (the administrator for establishing the site, uploaders for adding content to the site, and downloaders for laundering funds to purchase content from the site), *see id.*

This satisfies the threshold questions for default. *See United States v. All Assets Held In Account No. XXXXXXXX*, 83 F. Supp. 3d 360, 373 (D.D.C. 2015) (complaint sufficiently pled a reasonable belief of forfeitability, because the government specified the victim of the alleged fraud; the perpetrators of the alleged fraud; the goal of the fraud; the means of effectuating the fraud; and which members of the fraud were responsible for which acts).

A. Broad Child Pornography Forfeiture Authorities Are Satisfied Here.

The complaint alleges, *inter alia*, that the Defendant Properties were personal properties used to promote the commission of violations of:

- 18 U.S.C. § 2252(a)(2), that is, by receiving any visual depiction which contains materials depicting a minor engaging in sexually explicit conduct, which have been mailed or shipped or transported by computer; and

- 18 U.S.C. § 2252(a)(4)(B), that is, by possessing and/or accessing with intent to view a depiction of a minor engaged in sexually explicit conduct.

  i. The government has established by a reasonable belief that it met the elements of these two related offenses.

"To prove the offenses, the Government had to show [account holders] 'knowingly receive[d]' and 'knowingly possesse[d]' a 'visual depiction' involving 'the use of a minor engaging in sexually explicit conduct[,]' 18 U.S.C. §§ 2252(a)(2), (a)(4)(B)." *United States v. Wagner*, 951 F.3d 1232, 1256 (10th Cir. 2020). "[K]nowingly means the act was done voluntarily and intentionally, and not because of mistake or accident." *Id.* at 1257 (internal quotation marks

and citation omitted). "To receive a visual depiction means to take possession or accept delivery of it and includes download[ing] an image from the [I]nternet." *Id.* (internal quotation marks and citation omitted). "[P]ossession may be actual or constructive and generally means to own or to exert control over [an] object." *Id.* (internal quotation marks and citation omitted).

"[S]everal circuit courts have held that membership in a child pornography website alone sufficiently establishes probable cause, reasoning that an individual who took the affirmative steps necessary to become a member probably accessed or contributed to the site's illegal content." *United States v. Taylor*, 250 F. Supp. 3d 1215, 1230–31 (N.D. Ala. 2017), aff'd, 935 F.3d 1279 (11th Cir. 2019) (collecting cases). Records from Welcome To Video server showed that on the dates identified above, the respective users "logged into" the site, and purchased content to download. *See Wagner*, 951 F.3d at 1257. "Subpoenaed records [from the BTC Exchanges] established that [the BTC accounts were] registered to [the site users]." *Id.* (upholding conviction for customer of child pornography site accessed via Tor). "Any user logging into the [website] would have had to take these steps: (1) download Tor software; (2) acquire the website's unique algorithm-generated address (most likely from a [website] user or from another Tor hidden service page . . . ); (3) navigate to [the website], featuring suggestive images … with directions regarding file uploading and posting; (4) create a [website] account . . . ; and (5) arrive at the main [website] directory, which included forum titles that clearly alluded to illicit pornographic content of children," *id.* These "numerous affirmative steps" provide a reasonable belief that any user laundering BTC to the website "did so with the intent to access, view, and/or distribute child pornography; *i.e.*, to engage in criminal conduct." *Taylor*, 250 F. Supp. 3d at 1230.

"The access-with-intent offense is complete the moment that the elements of access and

11

intent coincide. 18 U.S.C. § 2252A(a)(5)(B)." *United States v. Tagg*, 886 F.3d 579, 587 (6th Cir. 2018). "Thus, even if the person never viewed illegal child pornography, knowingly accessing a child-pornography website with the intent to view illegal materials is itself a criminal act." *Id.* "Grammatically, the word 'accesses' (the actus reus of the crime) is directed towards the repository containing child pornography, not the child pornography itself." *Id.* Thus, there is a reasonable belief that the users identified above accessed Welcome to Video with the intent to view child pornography. *Id.*

"The person who completes the circle and views the image has, instead, committed the actus reus of possession." *Tagg*, 886 F.3d at 588. In fact, "it is common sense that a person who voluntarily joins a group such as [a website whose sole purpose was the exchange of child pornography] . . . would download such pornography from the website and have it in his possession." *United States v. Froman*, 355 F.3d 882, 890–91 (5th Cir. 2004).

    ii. <u>Child pornography offenses have broad authority allowing for the forfeiture of the Defendant Properties.</u>

The above child pornography offenses allow for forfeiture of property "used to promote the commission of child exploitation offenses." 18 U.S.C. §§ 2253(a)(3) and 2254. Property, such as a residence, is forfeitable if it provides a person with privacy and freedom from outside scrutiny, thereby facilitating the child pornography offense. *See United States v. Hull*, 606 F.3d 524, 528 (8th Cir. 2010) (house where defendant used the computer to solicit sex from children and distribute child pornography was "used to commit" the offense, because it provided privacy and freedom from outside scrutiny); *United States v. Wilk*, 2007 WL 2263942, *1 (S.D. Fla. Aug. 6, 2007) (residence where defendant used computers to download 90 images of minors engaged in explicit sexual activity forfeitable as facilitating property because the privacy of the home allowed

the defendant to operate without fear of discovery); *United States v. 7046 Park Vista Rd.*, 537 F. Supp. 2d 929, 941-42 (S.D. Ohio 2008) (residence where defendant videotaped himself spanking naked children was "crucial and necessary" to the commission of the offense because the defendant needed privacy to remain undetected); and *United States v. Ownby*, 926 F. Supp. 558, 566 (W.D. Va. 1996) (overruling defendant's objection that forfeiture of residence in which he used a computer to possess, receive and transport child pornography was excessive, finding that the privacy afforded by the dwelling was essential to the commission of the offense), *aff'd* 131 F.3d 138 (4th Cir. 1997). The BTC accounts comprising the Defendant Properties provided privacy and freedom from outside scrutiny, which is why customers used them to pay into the Welcome To Video website.

Property "used to commit" an offense is also a basis to forfeit such property. *United States v. Hull*, 606 F.3d 524, 528 (8th Cir. 2010). "The ordinary meaning of 'use' is '[t]o convert to one's service,' 'to employ,' 'to avail oneself of,' and 'to carry out a purpose or action by means of.'" *Id.* (citation omitted). In the present case, each BTC account was used to send money to Welcome To Video. Just as the residence in the above-cited cases were used for legitimate ends, so to could the Defendant Properties be used for other legitimate purposes; nevertheless, each account was also "used to commit" the child pornography offenses.

## CONCLUSION

Based on the United States' well-pleaded allegations in its Verified Complaint for Forfeiture *In Rem*, the Court finds that the Defendant Properties were used or intended to be used to promote or facilitate a violation of 18 U.S.C. § 2252. As such, the Defendant Properties are subject to forfeiture to the United States, pursuant to 18 U.S.C. § 18 U.S.C. §§ 2253(a)(3) and

2254.

The Court finds that the Verified Complaint for Forfeiture *In Rem* states a factual and legal basis for forfeiture. In addition, the Court also finds that process was fully issued in this action with respect to the Defendant Properties and returned according to law. In consequence, no response, answer, or defenses remain interposed and no opposition has been made to the Plaintiff's Motion for Entry of a Default Judgment.

Based upon the foregoing and the entire record in this action, it is by the Court, on this _____ day of _____ 2020, hereby

***ORDERED***, that United States' Motion for Entry of a Default Judgment is ***GRANTED***; and it is further

***ORDERED, ADJUDGED, AND DECREED***, that the Defendant Properties are **HEREBY DECLARED FORFEITED TO THE UNITED STATES OF AMERICA**, and that title to the Defendant Properties is vested in the United States of America; and that no right, title, or interest in the defendant property shall exist in any other person; and it is further

***ORDERED***, that the Clerk of the Court may close this matter as fully resolved.

*IT IS SO ORDERED*.

_____
DABNEY L. FRIEDRICH
DISTRICT COURT JUDGE
UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF COLUMBIA

**Attachment A**

| BTC Exchange | Account | USD | EUR | BTC | BCH | ETH | LTC |
|---|---|---|---|---|---|---|---|
| 1 | 5185e2c6b3bd3de60e00002a | | | | | | |
| 1 | 5652a83e6f4be24bf9000110 | | | | | | |
| 1 | 559715bd61373556e00000ae | | | | | | |
| 1 | 58760323ee243500a3067f85 | | | | | | |
| 1 | 56454cd5399d4a00f00001ae | | | | | | |
| 1 | 524c41b07f435f428400005a | | | | | | |
| 1 | 563443739ac69f3b29000170 | | | | | | |
| 1 | 5a4fab5fd24e170544892941 | | | | | | |
| 1 | 5676f8ba7d98e545080000b8 | | | | | | |
| 1 | 5687df5a4b12f73aa50000c0 | 995.71 | 18.05 | 4.90476894 | 3.91310093 | 6.1740011 | 7.77515352 |
| 1 | 55f1718c2289a067b50001fa | | | | | | |
| 1 | 55a4403965373100d7000165 | | | | | | |
| 1 | 566a1a4495c0be0d1c000230 | | | | | | |
| 1 | 55f974c78cc94d4d4b000244 | | | | | | |
| 1 | 531e0828ead59cce4a000264 | | | | | | |
| 1 | 583c85d54d3af20217519752 | | | | | | |
| 1 | 558ac736316131095b0001a4 | | | | | | |
| 1 | 573808d68fdf8333f300002a | | | | | | |
| 1 | 56d3b1cc9f49041768000086 | | | | | | |
| 2 | Francoca.87 | 3,187.66 | | | | | |
| 2 | ihackgeek | 1,680.72 | | | | | |
| 2 | Um2541 | 32,522.95 | | | | | |
| 3 | Culboy2012 | | | 0.31875905 | | | |
| 3 | Longhorn1 | | | 0.08619007 | | | |
| | | $38,387.04 | 18.05 | 5.30971806 | 3.91310093 | 6.1740011 | 7.77515352 |