UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>*Plaintiff*,<br><br>v.<br><br>TWENTY-FOUR CRYPTOCURRENCY ACCOUNTS,<br><br>*Defendants.* | No. 19-cv-3098 (DLF) |

### MEMORANDUM OPINION

This action arises out of an investigation by the Internal Revenue Service and the Department of Homeland Security into a child pornography website called Welcome to Video (the Website). Compl. ¶ 2, Dkt. 1. Following that investigation, the United States initiated this forfeiture action in rem against twenty-four cryptocurrency accounts (the Defendant Properties) containing U.S. dollars, Bitcoin, and other forms of cryptocurrency allegedly used in connection with the Website's criminal activities. Before the Court is the government's Motion for Default Judgment against the Defendant Properties. Pl.'s Mot. for Default J. (Pl.'s Mot.), Dkt. 11. For the reasons that follow, the Court will grant the motion.

**I.   BACKGROUND**

   **A.   Factual Background**[1]

Bitcoin, like other so-called "cryptocurrencies" that have emerged in recent years, is a virtual currency traded over the Internet and controlled through computer software rather than

---

[1] On a motion for default judgment following the entry of default, courts construe the well-pleaded allegations of the complaint as admitted. *Boland v. Elite Terrazzo Flooring, Inc.*, 763 F. Supp. 2d 64, 68 (D.D.C. 2011).

issued by a bank or government.  Compl. ¶ 7.  Bitcoin is sent and received using a virtual "address" made up of a unique string of characters akin to a bank account number; each address is controlled through a password, or private "key."  *Id.*  Bitcoin and other cryptocurrencies are bought and sold on online "exchanges," which allow customers to exchange virtual currencies for conventional money and vice versa.  *Id.*  The value of these currencies fluctuates; one Bitcoin was worth $11,573 in March 2018.  *Id.*  Every Bitcoin transaction is recorded on a decentralized public ledger called the "blockchain."  *Id.*

      The Website is a Tor-based[2] Internet site that "host[s] and distribute[s] image and video files depicting child pornography."  *Id.* ¶ 9.  Customers receive content from the Website by redeeming "points," which can be obtained by uploading child pornography videos, referring new customers to the site, or by paying various quantities of Bitcoin.  *Id.* ¶ 14.  The Website directs customers seeking to pay for points to online Bitcoin exchanges and "assign[s] a unique [Bitcoin] address for each [Website] customer account to receive payments and assign points appropriately."  *Id.* ¶ 15.  The Website set up over 1.3 million Bitcoin addresses over the course of its operations, *id.*, and between June 2015 and March 2018, the Website "received at least 420 [Bitcoin] through at least 7,300 transactions worth over $370,000."  *Id.* ¶ 17.

      Over the course of their investigation, law enforcement officials compiled a list of thousands of unique Bitcoin addresses associated with the Website, including one assigned to an undercover agent who created an account.  *Id.* ¶ 16.  That agent "paid [Bitcoin] to [the Website] and used the [W]ebsite to download child pornography video files" multiple times.  *Id.* ¶ 18.  During the agent's investigation, the government reviewed the Website's source code and traced

---

[2] Tor masks Internet users' IP addresses and thereby anonymizes user activity on Tor-based websites like the Website.  *Id.* ¶ 6.

2

its IP address to Jong Woo Son, a telecommunications provider in South Korea. *Id.* ¶ 19. South Korean officials subsequently executed a warrant at Son's home, where they located and seized the Website's server and storage media. *Id.* ¶ 21. The evidence corroborated that the Website was dedicated to the distribution of child pornography and "generally identified" which customers were associated with which payments to the Website. *Id.* ¶ 22. In addition, "[a] review of a sample of the payments to [the Website] cross-referenced against the username and download data from the server revealed that payments to [the Website] corresponded with the user downloading videos from [the Website]." *Id.*

By analyzing the blockchain, the government identified three different Bitcoin exchanges (the Exchanges) that had hosted transactions between the Website and the Defendant Properties. *Id.* ¶¶ 24–25; *see also id.* Attach. A. Each of the Defendant Properties had transferred Bitcoin on at least one occasion to a Bitcoin address controlled by the Website; for each account, at least one of the payments was linked to a specific user name that downloaded content from the Website. *Id.* at ¶ 25. Law enforcement obtained a warrant for the Defendant Properties and subsequently seized all twenty-four cryptocurrency accounts. *Id.*

## B. Procedural History

On October 16, 2019, the United States filed a verified complaint for forfeiture in rem of the Defendant Properties. Dkt. 1. The government posted notice on http://www.forfeiture.gov for thirty consecutive days from November 21, 2019 until December 20, 2019. *See* Decl. of Publication, Dkt. 3. No claims were filed in response to that publication before January 19, 2020. Aff. in Supp. of Default ¶ 7, Dkt. 8. The United States also identified potential claimants of the Defendant Properties using legally mandated "know-your-customer" information collected by the Exchanges, Pl.'s Mot. at 21, and then sent notice to those potential claimants through

certified mail, email, or both. Aff. in Supp. of Default ¶ 5(a). No potential claimants had filed a claim to the Defendant Properties as of June 8, 2020. *Id.* ¶ 6.

The Clerk of the Court entered a warrant for arrest in rem of the Defendant Properties on April 2, 2020. Dkt. 6. On June 12, 2020, the government filed an affidavit for default, Dkt. 8, and on June 23, 2020, the Clerk of the Court entered default. Dkt. 10. The United States filed the instant motion for default judgment on June 24, 2020. Dkt. 11.

## II.  LEGAL STANDARD

The Federal Rules of Civil Procedure empower district courts to enter default judgment against a defendant who fails to defend its case. Fed. R. Civ. P. 55(b)(2); *Keegel v. Key West & Caribbean Trading Co.*, 627 F.2d 372, 375 n.5 (D.C. Cir. 1980). While federal policy generally favors resolving disputes on their merits, default judgments are appropriate "when the adversary process has been halted because of an essentially unresponsive party." *Mwani v. bin Laden*, 417 F.3d 1, 7 (D.C. Cir. 2005) (quotation marks omitted).

Obtaining a default judgment is a two-step process. First, the plaintiff must request that the Clerk of Court enter default against a party who has failed to plead or otherwise defend. Fed. R. Civ. P. 55(a). The Clerk's entry of default establishes the defendant's liability for the well-pleaded allegations of the complaint. *Boland v. Providence Constr. Corp.*, 304 F.R.D. 31, 35 (D.D.C. 2014). Second, the plaintiff must apply to the court for a default judgment. Fed. R. Civ. P. 55(b). At that point, the plaintiff "must prove his entitlement to the relief requested using detailed affidavits or documentary evidence on which the court may rely." *Ventura v. L.A. Howard Constr. Co.*, 134 F. Supp. 3d 99, 103 (D.D.C. 2015) (internal quotation marks and alterations omitted). "[T]he defendant's default notwithstanding, the plaintiff is entitled to a default judgment only if the complaint states a claim for relief." *Jackson v. Corr. Corp. of Am.*,

4

564 F. Supp. 2d 22, 27 (D.D.C. 2008) (quoting *Descent v. Kolitsidas*, 396 F. Supp. 2d 1315, 1316 (M.D. Fla. 2005)).

Pleading requirements in civil forfeiture actions are governed by the Supplemental Rules and by the Federal Rules of Civil Procedure, to the extent they are "not inconsistent with the[] Supplemental Rules." Fed. R. Civ. P. Supp. R. A(2). Supplemental Rule G establishes the requirements for a complaint in such an action. As relevant here, the complaint must be verified, state the grounds for jurisdiction, describe the property "with reasonable particularity," identify the statute under which the action is brought, and "state sufficiently detailed facts to support a reasonable belief that the government will be able to meet its burden of proof at trial." Fed. R. Civ. P. Supp. R. G(2). "Before a default judgment is entered pursuant to a complaint for forfeiture in rem, the government must also show that it complied with the notice requirements contained in the Supplemental Rules." *United States v. $1,071,251.44 of Funds Associated with Mingzheng Int'l Trading Ltd.*, No. 17 Civ. 01166, 2018 WL 3949962 at *5 (D.D.C. 2018).

### III.  ANALYSIS

#### A.  Notice

Supplemental Rule G(4) requires the government to provide two forms of notice in a forfeiture action in rem: notice to the public via publication and notice to potential claimants via direct notice. *See* Fed. R. Civ. P. Supp. R. G(4)(a), (b). Notice by publication must describe the property, state the time to file a claim and answer, and name the government attorney to be served with the claim and answer. Fed. R. Civ. P. Supp. R. G(4)(a)(ii). Such notice is sufficient if it is published "on an official internet government forfeiture site for at least 30 consecutive days." *Id.* G(4)(iv)(C). Here, the government posted notice of this forfeiture proceeding on http://forfeiture.gov for 30 consecutive days, starting on Nov 21, 2019 and ending on December

20, 2019.  Aff. in Supp. of Default ¶ 7; *see* Decl. of Publication.  The notice stated that "[a]ny person claiming a legal interest in the Defendant Property must file a verified Claim with the court within 60 days from the first day of publication."  Decl. of Publication at 2–3.  No claims were filed in response to the publication by January 19, 2020.  Aff. in Supp. of Default ¶ 7; *see also* Fed. R. Civ. P. Supp. R. G(5)(a)(ii)(B) (requiring any claim to be filed "no later than 30 days after final publication of . . . legal notice under Rule G(4)(a)").  This satisfied the government's obligation to provide notice by publication.  *See* Fed. R. Civ. P. Supp. R. G(4)(a)(iv)(C).

Direct notice must be sent "to any person who reasonably appears to be a potential claimant" and "by means reasonably calculated to reach the potential claimant."  *Id.* Supp. R. G(4)(b)(i), (iii)(A); *see Mesa Valderrama v. United States*, 417 F.3d 1189, 1197 (11th Cir. 2005) ("Reasonable notice . . . requires only that the government attempt to provide actual notice; it does not require that the government demonstrate that it was successful in providing actual notice.").  The government relied on the "know-your-customer" information obtained from the Exchanges to identify, locate, and provide notice to potential claimants of the Defendant Properties.  *See* Pl.'s Mot. at 21.  On or around December 27, 2019, the government sent notice via certified mail to 19 of the 24 potential claimants it had identified using physical mailing addresses obtained from the Exchanges.  Aff. in Supp. of Default ¶ 5(a); Pl.'s Mot. at 21.  Six of the mailings were returned as undeliverable.  Aff. in Supp. of Default ¶ 5(a); Pl.'s Mot. at 21.

On or around that same date, the United States also emailed notice to 23 of the 24 potential claimants using email addresses provided by the Exchanges.  Aff. in Supp. of Default ¶ 5(a); Pl.'s Mot. at 21–22.  Four of the emails "bounced back" as undeliverable because the accounts were no longer active.  Aff. in Supp. of Default ¶ 5(a); Pl.'s Mot. at 22.  On May 4,

6

2020, the government resent notice to any potential claimant for whom notice was unsuccessful via mail or email.  Aff. in Supp. of Default ¶ 5(b).  No potential claimants filed a claim to the Defendant Properties on or before June 8, 2020.  *Id.* ¶ 6; *see* Fed. R. Civ. P. Supp. R. G(5)(a)(ii).

These actions satisfied the government's obligation to provide direct notice to potential claimants.  *See* Fed. R. Civ. P. Supp. R. G(4)(b).  Adequate notice requires only "that the government *attempt* to provide actual notice; it does not require that the government demonstrate that it was successful in providing actual notice."  *$1,071,251.44 of Funds Associated with Mingzheng Int'l Trading Ltd.*, 2018 WL 3949962 at *5 (emphasis added) (quoting *Mesa Valderrama*, 417 F.3d at 1197).  When the government attempts to provide notice and "hear[s] nothing back indicating that anything ha[s] gone awry," it is reasonable to believe that the chosen method informed the interested parties.  *Jones v. Flowers*, 547 U.S. 220, 226 (2006).  The government therefore satisfied its obligations by resending notice only to those recipients for whom certified mail and email notice were both returned as undeliverable.

Moreover, email was an appropriate form of notice under these circumstances because the case involves international defendants whose locations are hard to pin down and the nature of the crimes necessarily entails some degree of cyber-proficiency on the part of the Defendant Properties' owners.  *See Fed. Trade Comm'n v. PCCare247, Inc.*, No. 12 Civ. 7189, 2013 WL 841037, at *4 (S.D.N.Y. Mar. 7, 2013) (permitting notice by email where it was "reasonably calculated to provide defendants with notice"); *Philip Morris USA Inc. v. Veles Ltd.*, No. 06 Civ. 2988, 2007 WL 725412, at *3 (S.D.N.Y. Mar. 12, 2007) (permitting notice by email where "defendants conduct business extensively . . . through [the] Internet" and "defendants do not disclose their physical addresses").

Between certified mail and email notice, every potential claimant but two—one who provided no email or mailing address to the Exchanges and another who provided no mailing address and a defunct email address—received direct notice at least once. Pl.'s Mot. at 22. With respect to the two potential claimants whom the government was unable to reach directly, notice via publication satisfied the government's obligations. *See Johnson v. United States*, No. 1:03 Civ. 00281, 2004 WL 2538649, at *4 (S.D. Ind. Oct. 22, 2004) (citing *Mullane v. Centr. Hanover Bank & Tr. Co.*, 339 U.S. 306, 317–319 (1950)) (finding publication of a forfeiture notice satisfies due process requirements where "the government does not know or reasonably cannot discover the [claimants'] whereabouts"). The government has met the notice requirements of Supplemental Rule G.

**B.    Adequacy of the Complaint**

In any action seeking forfeiture in rem under a federal statute, "the complaint must be verified, state the grounds for jurisdiction and venue, describe the property with reasonable particularity, identify the statute under which the forfeiture action is brought, and state sufficiently detailed facts to support a reasonable belief that the government will be able to meet its burden of proof at trial." *United States v. $6,999,925.00 of Funds Associated With Velmur Mgmt. Pte, Ltd.*, 368 F. Supp. 3d 10, 19 (D.D.C. 2019) (internal quotation marks omitted) (quoting Fed. R. Civ. P. Supp. R. G(2)).

This Court has jurisdiction over "any action or proceeding for the recovery or enforcement of any . . . forfeiture . . . incurred under any Act of Congress." 28 U.S.C. § 1355(a). Venue is proper in the District of Columbia as well, because it is the location where the "acts or omissions giving rise to the forfeiture occurred," 28 U.S.C. § 1355(b)(1)(A), and it is the "judicial district . . . into which the [Defendant Properties] [were] brought" after being seized, 28

8

U.S.C. § 1395(c).  Further, the government filed a Verified Complaint identifying the statute under which the forfeiture action was brought and describing the Defendant Properties in extensive detail.  *See* Compl. ¶¶ 2, 25.

Therefore, the only remaining issue is whether the complaint "state[s] sufficiently detailed facts to support a reasonable belief that the government will be able to meet its burden of proof at trial." *United States v. All Assets Held in Account Number XXXXXXX*, 83 F. Supp. 3d 360, 366 (D.D.C. 2015) (quoting Fed. R. Civ. P. Supp. R. G(2)(f)).  The government brought this action under 18 U.S.C. § 2252, *see* Compl. ¶ 2, which prohibits individuals from "knowingly receiv[ing], or distribut[ing], any visual depiction . . . of a minor engaging in sexually explicit conduct," 18 U.S.C. § 2252(a)(2), and from "knowingly possess[ing], or knowingly access[ing] with intent to view . . . films . . . or other matter which contain[s] any visual depiction . . . involving the use of a minor engaging in sexually explicit conduct," *id.* § 2252(a)(4)(B)(i).  Pursuant to 18 U.S.C. § 2253(a)(3), anyone in violation of § 2252 "shall forfeit to the United States such person's interest in any property, real or personal, used or intended to be used" in committing or promoting commission of the offense.

The fact that customers had to take a number of affirmative steps to transact with the Website—creating an account and then amassing and expending points, which were obtained through referring new customers, uploading videos, or purchasing Bitcoin—"provide[s] . . . more than [a] substantial basis" to furnish a reasonable belief that "[users] logging into [the Website] did so with the intent to access, view, and/or distribute child pornography." *United States v. Taylor*, 250 F. Supp. 3d 1215, 1230 (N.D. Ala. 2017) ("Any user logging into the [child pornography website] would have had to take these steps: (1) download Tor software; (2) acquire the website's unique algorithm-generated address . . . (3) navigate the [website] homepage . . .

9

(4) create a[n] [] account . . . and (5) arrive at the main [website] directory . . . ."). Records from the Website's server seized from Son's residence also revealed that users logged into the Website and purchased downloadable content. Compl. ¶ 22; *see United States v. Wagner*, 951 F.3d 1232, 1257–58 (10th Cir. 2020) (upholding a criminal conviction where "[s]ubpoenaed records established that [the accounts were] registered to [the website's users]"). These facts will likely enable the government to meet its burden of proof at trial.

Forfeiture is authorized under 18 U.S.C. § 2253(a)(3) if the Defendant Properties were "used or intended to be used to commit or to promote the commission" of knowingly possessing or accessing child pornography in violation of § 2252. 18 U.S.C. § 2253(a)(3). To "use" is to "convert to one's service, to employ, to avail oneself of, and to carry out a purpose or action by means of." *United States v. Hull*, 606 F.3d 524, 527 (8th Cir. 2010) (alterations adopted) (quoting *Bailey v. United States*, 516 U.S. 137, 145 (1995)). In *Hull*, there was ample evidence that the defendant was guilty of "using" his real property to commit child pornography offenses where he connected to the Internet and distributed illegal content from a room in his home. *Id.* Here, the Defendant Properties were employed to make payments to Bitcoin accounts controlled by the Website that in turn enabled users to access and download illicit materials from the Website. *See* Compl. ¶ 22, 25. As in *Hull*, the evidence here "show[s] a substantial connection – not merely an incidental or fortuitous relationship – between the [Defendant Properties] and the offenses." *Hull*, 606 F.3d at 527–28. Accordingly, the Defendant Properties were "used" to transact with the Website in the manner contemplated by § 2253 and they are therefore subject to forfeiture.

## CONCLUSION

For the foregoing reasons, the Court grants the plaintiff's motion for default judgment. A separate order consistent with this decision accompanies this memorandum opinion.

                                                                                                                        */s/ Dabney L. Friedrich*
                                                                                                                  DABNEY L. FRIEDRICH

July 20, 2020                                                                                          United States District Judge